# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

FILED

Mar 15 2013, 8:53 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MATTHEW BRYANT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 03A04-1205-CR-283 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT
The Honorable Chris D. Monroe, Judge
Cause No. 03D01-1108-FB-4453

**March 15, 2013**

**OPINION - FOR PUBLICATION**

**DARDEN, Senior Judge**

## STATEMENT OF THE CASE

Matthew Bryant appeals his conviction and sentence for aggravated battery, a Class B felony, and for being a habitual offender. We affirm.

## ISSUES

Bryant raises four issues, which we expand and restate as:

I.  Whether Bryant was deprived of his right to a speedy trial under the federal and state constitutions.

II.  Whether the trial court abused its discretion in admitting evidence.

III.  Whether the evidence is sufficient to sustain Bryant's conviction for aggravated battery.

IV.  Whether the trial court abused its discretion in sentencing Bryant.

V.  Whether Bryant's sentence is appropriate.

## FACTS AND PROCEDURAL HISTORY

On June 4, 2011, Bryant was incarcerated on unrelated charges in the Bartholomew County Jail. As the inmates ate lunch in their cellblock, Bryant perceived that fellow inmate Roosevelt Crowdus was eating spaghetti too loudly. Bryant told him, "[L]et's go to the room," which Crowdus interpreted as a challenge to go fight in Bryant's cell. Tr. p. 199. Crowdus followed Bryant to the cell. Although disputed, Crowdus testified that Bryant threw the first punch but missed. The combatants exchanged punches with their fists and then fell to the floor struggling with one another. Bryant put Crowdus in a headlock, but Crowdus grabbed Bryant's groin. At that point, they broke apart from one another.

2

Bryant told Crowdus that Crowdus "don't got [sic] enough heart for [Bryant]," which Crowdus took to mean that Bryant did not think Crowdus could beat him. *Id.* at 202. Crowdus offered to shake hands to establish a truce, but Bryant rejected the offer, stating, "I don't shake up," and "Aryans don't shake up." *Id.* at 203. The two resumed fist-fighting, and at some point Crowdus put his hands around Bryant's neck. Later in the altercation, while Crowdus was holding onto the top bunk, Bryant grabbed a pencil and swung it at Crowdus, stabbing him in the left ear. Crowdus fell to the floor, and Bryant walked out of the cell. As Bryant exited the cell, he told an inmate, "[I]f you want to see a kill, that's a kill." *Id.* at 281. Crowdus subsequently obtained assistance from jail staff, who summoned an ambulance. Despite undergoing surgery, Crowdus permanently lost all hearing in his left ear.

The State charged Bryant with the instant offense, aggravated battery, and with being an habitual offender. A jury found Bryant guilty of aggravated battery but deadlocked on the habitual offender determination. The trial court declared a mistrial and ordered that Bryant be retried on the habitual offender enhancement. A jury determined at a subsequent trial that Bryant was an habitual offender. The court sentenced Bryant to an aggregate term of fifty years, and this appeal followed.

## DISCUSSION AND DECISION

### I. RIGHT TO A SPEEDY TRIAL

Bryant filed a motion for speedy trial on October 26, 2011, and the court released him on his own recognizance on December 13, 2011, while trial was pending. Bryant

3

argues that the court nonetheless infringed upon his right to a speedy trial despite being released in this case because he remained incarcerated on other charges.

The Sixth Amendment to the Constitution of the United States and article one, section twelve of the Indiana Constitution both protect the right of an accused to a speedy trial. *Cundiff v. State*, 967 N.E.2d 1026, 1027 (Ind. 2012). This right is a fundamental principle of constitutional law and has been "zealously guarded" by our courts. *Id.* The provisions of Indiana Criminal Rule 4 implement a defendant's right to a speedy trial. *Otte v. State*, 967 N.E.2d 540, 545 (Ind. Ct. App. 2012), *trans. denied*. That rule provides, in relevant part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

Ind. Crim. Rule 4(B). It is well established that Criminal Rule 4 places an affirmative duty on the State to bring a defendant to trial. *Cundiff*, 967 N.E.2d at 1028. Bryant's speedy trial claim presents a question of law, which we review de novo. *Id.* at 1027.

Here, the relevant facts are not in dispute. The trial court held an initial hearing in the instant case on August 29, 2011, and scheduled a jury trial for February 7, 2012. Bryant filed a speedy trial request on October 26, 2011. That is the date upon which the seventy-day period set forth in Indiana Criminal Rule 4(B) began to run.

On November 29, 2011, the State filed a motion requesting the trial court to release Bryant on his own recognizance in this case, noting that he would remain

4

incarcerated due to another pending case. The trial court held a hearing on the State's motion on December 13, 2011, within the seventy-day deadline. On the same day, the trial court granted the State's motion and ordered Bryant released upon his own recognizance in this case. Bryant remained incarcerated due to another case until his trial in this case commenced on February 7, 2012. That date was beyond the seventy-day period that began running on October 26, 2011.

We find guidance in our Supreme Court's opinion in *Cundiff*. In that case, the Court specifically "address[ed] the question of whether an incarcerated defendant has the right to be tried within seventy days under Criminal Rule 4(B) when he is being held for an unrelated offense and not on the charges for which speedy trial is demanded." *Cundiff*, 967 N.E.2d at 1028-29. Cundiff was arrested for driving while intoxicated and other charges, and he was released on bond after a brief period of incarceration. However, he was soon incarcerated again on a separate probation revocation matter. Next, Cundiff filed a motion for speedy trial in the drunken driving case, and he subsequently filed a motion for discharge. The trial court denied his motion for discharge, and our Supreme Court affirmed. The Court reviewed its precedent and concluded: "[F]or Rule 4(B) to apply, the defendant must be incarcerated on the charge for which he seeks a speedy trial, and as long as that requirement is met, the availability of Rule 4(B) is not affected if the defendant is also incarcerated on other grounds." *Id.* at 1031. Thus, Cundiff's right under Criminal Rule 4(B) was not violated because he was not incarcerated on the charges for which he sought a speedy trial.

5

In this case, applying the reasoning in *Cundiff*, we find that the trial court did not violate Criminal Rule 4(B). Bryant was released on his own recognizance in this case within seventy days of requesting a speedy trial. Bryant argues that this interpretation of Criminal Rule 4 is too narrow and undermines a defendant's right to a speedy trial. Specifically, he believes the State will have no incentive to try a defendant quickly if it knows the defendant can be released in one case because the defendant will still remain incarcerated for another case. We acknowledge Bryant's argument, but we cannot reject our Supreme Court's clear holding in *Cundiff*.

Bryant also claims that even if the trial court did not violate the terms of Criminal Rule 4, his right to a speedy trial has been violated because the court did not comply with "the spirit" of that rule. Appellant's Br. p. 23. He cites *State v. Roberts*, 171 Ind. App. 537, 358 N.E.2d 181 (1976), in support of his claim, but that case is distinguishable. There, a juvenile court waived jurisdiction over Roberts on March 19, 1975, and ordered that he be transferred to the custody of the sheriff to stand trial as an adult for the crime of escape. However, the State did not file an information until May 8, 1975. Upon review, a panel of this Court noted that Roberts' detention from March 19 through May 8 was not the result of an arrest or caused by a felony charge. Thus, the trial court should have applied procedural safeguards that would have protected Roberts' right to a speedy trial. The Court determined that Criminal Rule 4(B) applied to Roberts' detention and that the State's failure to timely charge and try Roberts violated the spirit of the rule.

In this case, there is no dispute that Bryant's initial hearing on the charge was held in a timely manner. Consequently, it cannot be said that Bryant experienced an

6

unreasonable delay, as Roberts did, and *Roberts* is not controlling. We conclude that the court did not violate Bryant's right to a speedy trial.

## II. ADMISSION OF EVIDENCE

Bryant argues that the trial court erred by allowing a detective to tell the jury what Crowdus said at the hospital and by admitting a recording of Bryant's telephone conversation with a friend. The admission or exclusion of evidence rests within the sound discretion of the court, and we review for an abuse of discretion. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012). An abuse of discretion occurs when the court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

## A. ADMISSION OF CROWDUS' STATEMENT AT THE HOSPITAL

Detective Christopher Roberts was dispatched to investigate Crowdus' stabbing after jail staff reported it. He went to the jail and spoke with the staff, and then he followed the ambulance that took Crowdus to the hospital. Roberts interviewed Crowdus before he began receiving treatment. At trial, the following colloquy occurred:

> [STATE:] What, if anything, did Roosevelt tell you in terms of what occurred during the assault?
>
> [ROBERTS:] He told me that he was invited to the cell, where they started a fight. He said that he was not the first one that threw a punch, but the Defendant . . . , [sic] Excuse me.
>
> . . . .
>
> [BRYANT:] I'm going to object to this questioning. Mr. Crowdus has already testified as to what happened. This is hearsay.
>
> [THE COURT:] Overruled.

7

[ROBERTS:] Roosevelt Crowdus told me that he was invited into the cell where they commenced to fight and it was over what he believed was that he was eating too loudly. And when he got into the cell, he said that the Defendant threw the first punch, which he missed, and he retaliated with a strike to the face.

Tr. p. 341.

Bryant contends that Roberts' account of what Crowdus told him is inadmissible hearsay. We agree. Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801. Hearsay is not admissible except as provided by the Indiana Rules of Evidence or by law. Ind. Evidence Rule 802. Roberts' description of Crowdus' statement is an out-of-court statement, and it reasonably could be construed to have been offered to prove the truth of Crowdus' statement.

The State argues that Roberts' testimony about Crowdus' statement is not hearsay because the statement was "one of identification of a person made shortly after perceiving a person," pursuant to Indiana Evidence Rule 801(d)(1)(C). We disagree. There was no dispute at trial that Bryant stabbed Crowdus; thus, Crowdus' statement was one of explanation rather than identification.

The State also argues that Roberts' account of Crowdus' statement was admissible as an excited utterance. Indiana Evidence Rule 803(2) allows the admission of "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Here, Crowdus returned to his cell after the stabbing and lay in his bunk until another inmate summoned jail staff. The record does not disclose how long Crowdus was in his cell until staff arrived. The jail

8

officers requested assistance from their supervisor. After an undisclosed period of time, the supervisor went to Crowdus' cell, reviewed the situation, and summoned paramedics. The record does not reflect how long it took the paramedics to arrive at the jail. The paramedics took Crowdus to the hospital, and the record does not indicate how long the trip to the hospital took. Thus, the State has failed to establish how much time elapsed between the stabbing and Crowdus' conversation with Roberts, which is essential to determining whether a witness was still under the stress of the event or condition. Furthermore, at the hospital Crowdus talked to Roberts in a "low and slow" tone of voice rather than in an excited manner. Tr. p. 339. We cannot conclude that Crowdus was still under the stress of the stabbing when Roberts interviewed him, so Crowdus' statement was not an excited utterance and should not have been admitted.

Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt, satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction. *Id.*

Here, Crowdus and Bryant both testified at trial, and there is no dispute that Bryant stabbed Crowdus in the ear. Furthermore, Crowdus' statement to Roberts was, for the most part, cumulative of Crowdus' testimony. We cannot conclude that there is a substantial likelihood that Roberts' hearsay testimony contributed to the conviction. Consequently, admission of the testimony was harmless error.

## B. BRYANT'S TELEPHONE CALL

Bryant remained incarcerated in the Bartholomew County Jail after his fight with Crowdus. When an inmate places a telephone call, an automatic message informs the inmate at the beginning of the call that the call will be recorded. On July 4, 2011, the jail recorded a phone call that Bryant initiated to a friend. A redacted portion of the recording was admitted into evidence at trial. The portion provides, in relevant part:

Male: I heard there is some f*****g dud [sic] that f*****g in there that f*****g like beat you up or something that's what somebody was telling me that.

Male: Huh? Beat me up?

Male: Yeah there was some . . . yeah.

Male: No.

Male: I-I told the girl I was like, I told that chick I was like man, I said, I don't know I said I've known Matt for awhile, I said I've never seen anybody beat up Matt. (laughs)

Male: Who-who was, which was the chick?

Male: Uh, some girl at my work. I don't know her name, but she uh, she dates f*****g Matt Brantley.

Male: Oh, black dude, Matt Brantley. No I beat up . . .

Male: Yeah.

Male: [A] black dude. I-I mean I beat this mother f*****g rug up decent. I mean I stabbed him in the ear with a pencil and everything. I f****d him up.

Male: Yeah, see I heard that too and then that's what she was telling me she's like yeah she's like I guess a couple of them f*****g black dudes got a hold of him or something and . . .

Male: Man no . . .

Male: [G]ot back at him or something.

Male: I . . .

Male: I was just like oh, I don't know about that.

Male: Where do you work at?

Male: Uh, The Garage downtown.

Male: Oh, The Garage. Oh, no, who . . .

Male: Yeah.

Male: [A]in't none of the dudes, there ain't no black dude . . . I called them all in the room once and told them I said if we're going to get it, let's get it. And Dirk Neal . . .

Male: Yeah.

Male: [H]e – he was like f\*\*k it, let's get it mother f\*\*\*\*\*s. And-and . . .

Male: Yeah, I mean that's what I told her I said man . . . I've known Matt forever and I said I ain't never . . . heard not nobody [sic] beating him up. (laughs)

Male: Let, about . . .

Male: Are you there?

Male: But yeah . . . they [sic], let her know I am 7 and 0 in the county jail. So . . .

Male: What's that?

Male: Tell her that I am 7 and 0, there is [sic] 7 wins and 0 loses [sic] so . . .

Male: (laughs)

Male: . . . I've been running through mother f\*\*\*\*\*s left and right. I mean . . .

Male: Oh, I'm sure you have. (laughs)

Male: . . . [T]hey had to carry old boy out to the mother f\*\*\*\*\*g [sic], on a stretcher man. So . . .

Male: (laughs)

State's Ex. 11 (recording), Defendant's Ex. A pp. 9-11 (transcript of recording).

Bryant argues that the recording contains inadmissible hearsay, specifically statements by Bryant's friend and a woman with whom Bryant's friend had spoken. In *Williams v. State*, 669 N.E.2d 956, 958 (Ind. 1996), Williams contended that the trial court should not have admitted recordings of Williams' conversations with a confidential informant, asserting that the informant's statements were hearsay. Our Supreme Court determined that the informant's statements were largely intended to prompt Williams to speak and were not admitted for the truth of the matter asserted. Consequently, the statements were not hearsay.

In this case, as in *Williams*, the statements by Bryant's friend, including his account of what a female co-worker told him, served to prompt Bryant to speak.

11

Bryant's statements constituted the evidentiary weight of the conversation. Thus, we conclude that the recording was not inadmissible hearsay.

Next, Bryant claims that even if the recording was not hearsay, the trial court should not have admitted it because it was unfairly prejudicial. Indiana Evidence Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." The balancing of the probative value against the danger of unfair prejudice must be determined with reference to the issue to be proved by the evidence. *Brim v. State*, 624 N.E.2d 27, 35 (Ind. Ct. App. 1993), *trans. denied*. Evaluation of whether the probative value of an evidentiary matter is substantially outweighed by the danger of unfair prejudice is a discretionary task best performed by the trial court. *Baer v. State*, 866 N.E.2d 752, 763 (Ind. 2007).

Bryant asserts that the recording painted him "as a racist with a criminal history, violent propensity, and penchant for fighting in jail." Appellant's Br. p. 35. However, the key issue at trial was whether Bryant stabbed Crowdus in self defense. Bryant's statement in the recording that he "beat [Crowdus] up decent" and stabbed him in the ear helped to establish that Bryant was a willing participant in the fight. Furthermore, Bryant initiated the call and was aware that it was being recorded, so there is no question of surprise or coercion. In addition, other testimony at trial established that Bryant referred to himself as an Aryan, so the jury was already made aware that he may have had racist beliefs. Balancing the issue to be proved by the recording, specifically Bryant's intent,

12

against the danger of unfair prejudice, we cannot say that admission of the recording violated Indiana Evidence Rule 403. *See Baer*, 866 N.E.2d at 763 (determining that admission of a recording of Baer's jailhouse phone call was not unduly prejudicial because Baer was pursuing a defense of guilty but mentally ill, and the recording was highly probative to establish whether he was faking mental illness).

Finally, Bryant argues that the recording improperly informed the jury of prior, uncharged misconduct. Indiana Evidence Rule 404(B) provides, in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Our Supreme Court has stated as follows with respect to the intent exception:

> The intent exception in Evid. R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense. The trial court must then determine whether to admit or exclude such evidence depending upon whether "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

*Wickizer v. State*, 626 N.E.2d 795, 799 (Ind. 1993) (quoting Ind. Evidence Rule 403).

In this case, the State alleged that Bryant committed the crime of aggravated battery. Bryant presented evidence of a contrary intent at trial, specifically that he acted

13

in self defense. He sought to establish that Crowdus violated jail rules by entering Bryant's cell. Next, Bryant extensively cross-examined Crowdus, and Crowdus admitted that he could have asked the guards for help rather than going into Bryant's cell to fight. Crowdus also admitted during cross-examination that he struck Bryant during the fight. Thus, Bryant was attempting to prove that Crowdus was the initial aggressor and he was merely defending himself. Given Bryant's claim of self defense, the court properly allowed the State to present evidence of prior acts, specifically Bryant's prior jail fights, to prove his intent. *See Evans v. State*, 727 N.E.2d 1072, 1080 (Ind. 2000) (determining that the trial court's admission of Evans' act of strangulation was admissible under Rule 404(b) in Evans' attempted murder prosecution because Evans had claimed self defense, and Evans' act of strangulation rebutted his claim that the attempted murder victim was the aggressor). Furthermore, we have already determined that Evidence Rule 403 does not bar admission of the recording. For these reasons, the trial court did not abuse its discretion by admitting the recording.

### III. SUFFICIENCY OF THE EVIDENCE

Bryant argues there is insufficient evidence to support his aggravated battery conviction because he believes the State failed to rebut his claim of self defense. When a claim of self defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements beyond a reasonable doubt. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self defense is the same as the standard for any sufficiency of the evidence claim. *Id.* at 801. We do not reweigh the evidence or

judge the credibility of the witnesses. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We consider only the probative evidence and reasonable inferences drawn from the evidence that support the verdict. *Id.* If a defendant is convicted despite a claim of self defense, we reverse only if no reasonable person could say that self defense was negated by the State beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 800-01.

A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. Ind. Code § 35-41-3-2 (2006). To prevail on a claim of self defense, the defendant must present evidence that he: (1) was in a place he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Tharpe v. State*, 955 N.E.2d 836, 844 (Ind. Ct. App. 2011), *trans. denied*. A person is not justified in using force if the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action. Ind. Code § 35-41-3-2(e).

In this case, although some portions of the evidence are disputed, Bryant challenged Crowdus to fight in his cell. According to Crowdus, once they were in the cell Bryant threw the first punch but missed, and Crowdus then struck Bryant with his fist. It is undisputed that Bryant also struck Crowdus several times with his fist and put him in a headlock. It is further undisputed that when the combatants broke away from each other, Crowdus offered a truce. However, Bryant rejected the offer, and the two continued fist-fighting. Crowdus never used or reached for a weapon, but Bryant

15

grabbed a pencil and stabbed Crowdus with it, resulting in permanent injury to Crowdus' left ear. This evidence reasonably establishes that Bryant provoked the fight, or at least participated willingly in it, which undermines his claim of self defense. Furthermore, when Crowdus communicated his intent to withdraw from combat, Bryant rejected it and continued to fight. Consequently, the jury could have reasonably concluded that under the circumstances herein, Bryant was not justified in using the pencil as a weapon to stab Crowdus in the ear, causing permanent damage. *See* Ind. Code § 35-41-3-2(e); *Huls v. State* 971 N.E.2d 739, 747 (Ind. Ct. App. 2012) (determining that the State carried its burden of negating Huls' claim of self defense when Huls continued to shoot at the victims even after they asked him to stop shooting and said they were leaving), *trans. denied*. Bryant argues that he continued to fight because Crowdus was preventing him from leaving the cell or seeking assistance from the guards, but this is a request for us to reweigh the evidence, which we cannot do. We conclude that the State put forth sufficient evidence to negate Bryant's claim of self defense beyond a reasonable doubt.

## IV. SENTENCING – ABUSE OF DISCRETION

Bryant contends that the trial court overlooked mitigating factors he submitted at sentencing. Subject to the review and revision power discussed below, sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. *Id.* Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including

16

a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. *Id.* at 490-91.

Bryant claims the trial court should have determined that his difficult childhood and his mental illness were mitigating factors. However, Bryant did not cite those factors at sentencing. Instead, Bryant's entire argument at sentencing was as follows:

> We'd just ask the, the Court to consider the pre-sentence investigation report and the background of the Defendant as well as the fact that he's currently serving a prolonged sentence in prison. So we'd ask the Court to review those facts and sentence him accordingly.

Tr. p. 701. Although the trial court is obligated to review the presentence investigation report and consider all aggravating and mitigating circumstances presented in that document, the court is not required to comb through it and present mitigating arguments on behalf of the defendant when the defendant fails to act. Failure to present a mitigating circumstance to the trial court waives consideration of the circumstance on appeal. *McKinney v. State*, 873 N.E.2d 630, 646 (Ind. Ct. App. 2007), *trans. denied*. Consequently, Bryant's claims with respect to mitigating factors are waived.

Waiver notwithstanding, our Supreme Court has consistently held that evidence of a difficult childhood warrants little, if any, mitigating weight. *Ritchie v. State*, 875 N.E.2d 706, 725 (Ind. 2007). Here, the court noted that Bryant had a difficult childhood, but it was not a mitigating circumstance because "a number of attempts have been made

17

in the juvenile area to try to provide services to you. That was not successful." Tr. p. 704. We find no abuse of discretion with respect to Bryant's childhood.

Turning to Bryant's mental illness, there are four factors that bear on the weight to be given to mental illness at sentencing:

> (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime.

*Weeks v. State*, 697 N.E.2d 28, 30 (Ind. 1998). Here, the presentence investigation report indicated that Bryant had received counseling for mental illnesses, including bipolar disorder and substance abuse, since 1995. However, the report provides no evidence that relates to the other three factors set forth in *Weeks*. Consequently, even if Bryant had raised his mental illness as a mitigating factor, based on the evidence here the trial court would not have been obligated to find that it was a mitigating circumstance. The trial court did not abuse its discretion by failing to find that Bryant's mental illness is a mitigating factor.

## V. SENTENCING – APPROPRIATNESS OF SENTENCE

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid*

18

*v. State,* 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer*, 868 N.E.2d at 491).  The

defendant has the burden of persuading us that his sentence is inappropriate.  *Id.* (citing

*Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).  In making this determination, we

may look to any factors appearing in the record.  *Calvert v. State*, 930 N.E.2d 633, 643

(Ind. Ct. App. 2010).

We first look to the statutory range established for the class of the offense.  The

advisory sentence for a Class B felony is ten years, with a minimum of six years and a

maximum of twenty years.  Ind. Code § 35-50-2-5 (2005).  In addition, the habitual

offender determination carried an enhancement of ten to thirty years in this case.  Ind.

Code § 35-50-2-8 (2005).  Bryant received fifty years, the maximum possible sentence.

We next look to the nature of the offense and the character of the offender.  Our

review here of the nature of the offense shows that Bryant provoked a fight with a fellow

inmate over a trivial matter.  Crowdus testified that Bryant threw the first punch, refused

to stop fighting when Crowdus offered a truce, and subsequently permanently destroyed

Crowdus' hearing in one ear.  It is particularly troubling that Bryant committed this crime

while he was already incarcerated on other serious felony charges, because his actions

displayed contempt for the law and a willingness to commit serious crimes even when

incarcerated.  In addition, Bryant told another inmate his attack on Crowdus was a "kill"

and subsequently bragged about the fight in a phone call with a friend.

Our review here of the character of the offender shows that Bryant has a lengthy

criminal history.  As a juvenile, he committed several acts that would have constituted

battery had they been committed by an adult.  As an adult, Bryant has been convicted of

19

ten felonies, including burglary, strangulation, invasion of privacy, and possession of methamphetamine. At the time Bryant committed his current crime, he was already incarcerated on very serious felony charges including Class A felony battery, Class C felony battery, two counts of criminal confinement, and two counts of intimidation. He was subsequently convicted of those charges and sentenced to ninety-three years prior to sentencing in the current case. In addition, Bryant has violated the terms and conditions of his probation on multiple occasions. In summary, Bryant has a lengthy history of violent crimes, and prior, shorter sentences and terms of probation did not cause him to alter his behavior. To the contrary, over the course of his life his crimes have escalated and become more and more serious. Bryant also has a history of using methamphetamine and marijuana.

Bryant notes that he had a troubled childhood because he witnessed domestic abuse. He also asserts that he has a history of mental illness. Finally, he has sporadic employment when he is not incarcerated, and he has two daughters. In light of the vicious nature of the crime and Bryant's demonstrated unwillingness to reform, none of these circumstances render his sentence inappropriate. Consequently, we decline to revise his sentence.

CONCLUSION

For the reasons stated above, we affirm the judgment of the court.

Affirmed.

ROBB, C.J., and BAKER, J., concur.

20