Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the
case.



FILED
Mar 18 2014, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL B. TROEMEL**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TONY M. CASTORENO, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 12A04-1306-CR-290 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLINTON SUPERIOR COURT
The Honorable Justin H. Hunter, Judge
Cause No. 12D01-1212-FA-1049

**March 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

Tony M. Castoreno, Jr., appeals his convictions of battery by means of a deadly weapon, a Class C felony, Ind. Code § 35-42-2-1 (2012), and unlawful possession of a firearm by a domestic batterer, a Class A misdemeanor, Ind. Code § 35-47-4-6 (2007). We affirm.

## ISSUE

Castoreno raises one issue, which we restate as: whether the State presented sufficient evidence to negate his claim of self-defense beyond a reasonable doubt.

## FACTS AND PROCEDURAL HISTORY

Shannon Miller had been dating Lonnie Lawson, but she broke up with him because he was using methamphetamine and was abusive.[1] Miller began dating Castoreno. Lawson learned about the relationship and became angry.

On the morning of December 12, 2012, Miller and Castoreno were at the home of Castoreno's mother. At 7:30 a.m., they walked out the front door. Lawson rode up on a bicycle. He was "furious" and wanted to attack Castoreno. Tr. p. 426. When Lawson stepped onto the porch, Castoreno ran back into the house. Lawson went inside and saw Castoreno retrieve a handgun. Lawson backed out of the house, stepped off the porch, and moved toward the sidewalk. He was "fleeing[,] leaving." *Id.* at 429. Castoreno went outside with the handgun, shouted at Lawson, and shot him in the leg. Castoreno did not see Lawson wield a weapon.

---

[1] Miller and other witnesses testified that Lawson physically abused her. Lawson denied those allegations but acknowledged verbally abusing her when under the influence of methamphetamine.

Several neighbors called 911 when they heard the gunshot. Lawson asked Miller to call 911, but Miller and Castoreno got into a car and drove off. A police officer found Lawson walking away from the scene and arranged for an ambulance to take him to the hospital. Castoreno drove Miller to work, and then he threw the handgun in a dumpster. Next, he went to his brother's house, where he took a shower to remove "gun residue." *Id.* at 853. He bundled up the clothes he had worn in a pink towel and hid the bundle in his brother's shed.

The police interviewed Castoreno later in the day. He denied that Lawson had been at his mother's house and claimed that he never saw him that morning. He also denied knowing that Lawson had been shot. When questioned by the police, Miller denied seeing a gun that morning. *Id.* at 546.

The State charged Castoreno with attempted murder, aggravated battery, battery by means of a deadly weapon, and unlawful possession of a firearm by a domestic batterer. Castoreno filed a Notice of Defense of Justifiable Reasonable Force, asserting that he shot Lawson in defense of himself and Miller.

The case was tried to a jury. The fourth charge was bifurcated, so the jury was asked to decide only whether Castoreno was guilty of unlawful possession of a firearm. The jury determined that Castoreno was not guilty of attempted murder and aggravated battery but was guilty of battery by means of a deadly weapon and unlawful possession of a firearm. After the jury returned its verdicts, the court heard evidence on Castoreno's criminal history and concluded that he had a prior conviction for domestic battery. Thus, the court entered judgments of conviction on battery by means of a deadly weapon and

3

unlawful possession of a firearm by a domestic batterer. The court sentenced Castoreno accordingly, and this appeal followed.

<u>DISCUSSION AND DECISION</u>

Castoreno asserts the State failed to rebut his claim of self-defense. Our standard of review is as follows:

> When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements beyond a reasonable doubt. The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. We do not reweigh the evidence or judge the credibility of the witnesses. We consider only the probative evidence and reasonable inferences drawn from the evidence that support the verdict. If a defendant is convicted despite a claim of self-defense, we reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt.

*Bryant v. State*, 984 N.E.2d 240, 250 (Ind. Ct. App. 2013) (citations omitted), *trans. denied*.

A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. Ind. Code § 35-41-3-2(c) (2012). To prevail on a claim of self-defense, the defendant must present evidence that he or she: (1) was in a place he or she had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Bryant*, 984 N.E.2d at 250.

Here, there is no dispute that Lawson was angry at Castoreno and Miller and intended to fight Castoreno on the morning in question. However, Lawson did not have a weapon. When he saw Castoreno pick up a handgun, Lawson exited Castoreno's

4

mother's house and was leaving the property when Castoreno went outside, shouted at him, and shot him in the leg. The jury could have reasonably concluded from this evidence that: (1) Castoreno participated willingly in the violence by following Lawson outside and shooting him as he left; and (2) Castoreno did not have a reasonable fear of death or great bodily harm at the time of the shooting because Lawson was leaving and did not wield a weapon. *See Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002) (Wilson participated willingly in violence by retrieving a gun from his house and stepping outside to shoot at the victim's car); *Boyd v. State*, 550 N.E.2d 354, 356 (Ind. Ct. App. 1990) (Boyd did not have a reasonable fear of death or bodily harm despite being hit by the victim because Boyd left to retrieve a gun, returned, and shot the unarmed victim), *trans. denied*.

Castoreno argues he and Miller testified that Lawson had been physically abusive to Miller in the past and had repeatedly threatened to kill both of them in the days leading up to the shooting. Castoreno also points to evidence that Lawson was under the influence of methamphetamine at the time of the shooting and was thus dangerously unpredictable. However, it was within the jury's province to resolve any inconsistencies in the evidence and assess the credibility of witnesses. *Johnson v. State*, 671 N.E.2d 1203, 1209 (Ind. Ct. App. 1996), *trans. denied*. The State presented sufficient evidence to rebut Castoreno's claim of self-defense.[2]

---

[2] The State argues in passing that Castoreno's claim of self-defense does not affect his conviction for possession of a handgun by a domestic batterer because he continued to possess the gun after the shooting. Appellee's Br. p. 7 n. 3. We need not address this claim.

5

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

ROBB, J., and MATHIAS, J., concur.