**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**KIMBERLY JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DERRICK WEEDMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 90A04-1311-CR-549 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WELLS CIRCUIT COURT
The Honorable Kenton W. Kiracofe, Judge
Cause No. 90C01-1207-FB-8

**November 26, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Derrick Weedman appeals his conviction for Class B felony aggravated battery. We affirm.

**Issues**

Weedman raises numerous issues, which we restate as:

I.      whether the trial court properly admitted evidence that Weedman had pursued and later withdrew an insanity defense;

II.     whether the deputy prosecutor committed misconduct;

III.    whether the trial court properly allowed an emergency medical technician ("EMT") and a detective to testify about statements made by Weedman's mother;

IV.     whether the trial court properly excluded photographs of Weedman showing his 2008 traumatic brain injury;

V.      whether the State presented sufficient evidence to rebut Weedman's claim of self-defense;

VI.     whether the trial court abused its discretion when it sentenced Weedman; and

VII.    whether the sentence imposed by the trial court is inappropriate.

**Facts**

Weedman suffered a traumatic brain injury in 2008 when he tried to kill himself by driving his vehicle into his girlfriend's parked car. After the injury, he lived with his mother and stepfather, Ted Schlichter. Weedman was diagnosed with depression, schizophrenia, and bipolar disorder after the brain injury.

2

On July 20, 2012, Weedman's mother entered the house and found Schlichter on the floor in the living room bleeding from his face and unconscious. Weedman was in the kitchen. His drinking glass was broken, and the refrigerator was dented and had blood on it. Weedman asked his mother to call 911, saying he had tried to but could not.

Paramedics and police arrived, and Schlichter was taken to a hospital with severe fractures to the bones in his face and swelling in his brain. Weedman was treated at an emergency room for minor injuries to his hand and feet. He told the medical staff his injuries occurred because he punched Schlichter in the face. When the police took Weedman to jail, Weedman spontaneously told an officer, "It was him or me," "I have a plate in my head and if I'm hit there I would be a vegetable," and "I can beat this." Tr. p. 237. As a result of his injuries, Schlichter underwent a long rehabilitation and continues to suffer permanent impairments, including some vision loss, right vocal cord paralysis, and memory loss.

The State charged Weedman with Class B felony aggravated battery. In August 2012, Weedman filed a notice of insanity defense, and the trial court appointed two doctors to examine him to determine his competency to stand trial and his sanity at the time of the offense. Both doctors, Dr. Jere Lieb and Dr. Stephen Ross, reported that Weedman was capable of understanding the wrongfulness of his conduct and assisting in his defense. In May 2013, Weedman withdrew the insanity defense and his claim of incompetency.

At the August 2013 trial, Weedman argued that he injured Schlichter in self-defense, but the jury found Weedman guilty of aggravated battery. At the sentencing hearing, the trial court found Weedman's criminal history and the significant harm suffered by Schlichter to be

3

aggravating factors. The trial court found no mitigating factors. The trial court sentenced Weedman to twenty years in the Department of Correction. Weedman now appeals.

**Analysis**

**I. *Admission of Withdrawn Insanity Defense***

Weedman argues the admission of evidence that he had asserted an insanity defense and then withdrew it violated his Fifth Amendment protection against self-incrimination and was used for other improper purposes. The deputy prosecutor mentioned during opening statements that Weedman had filed and withdrawn a notice of insanity defense. Specifically, the deputy prosecutor said:

> The Defendant was arrested and he comes into this Court and he files a Notice of Insanity, files it with the Court and it's in the Court's records which means I did it, but I was insane when I did it, I wasn't in my right mind. Well we have two psychiatrists review him and meet with him and they say no, you are not insane, you weren't insane then. Then he files a Notice of Self-Defense which is I did it, but I was defending myself when I did it, we're going to scrap that one about I was insane when I did it, now we're going to go with I was defending myself in self-defense.

> Dr. Jere Lieb and Dr. Ross are the two psychiatrists who evaluated him will tell you 1) that he's not insane, they will tell you that the Defendant told them that he thought the victim came at him so he hit him once, hit him once. Those doctors will also tell you that the Defendant has anger control problems.

Tr. p. 113. Weedman did not object. During Weedman's opening statement, his counsel said, "Now [the deputy prosecutor] makes a . . . big deal about filing an insanity defense and the withdrawing of that defense, that was not my client, that was not Mr. Weedman's—". Id. at 118. The State objected, and the trial court sustained that objection.

4

The State called Dr. Lieb to testify. Dr. Lieb testified that he met with Weedman to determine his competency and sanity and that he determined Weedman was both competent to assist his attorney and sane at the time of the offense. Dr. Lieb extensively discussed Weedman's explanation of the incident. The State also called Dr. Ross to testify. Dr. Ross also testified that he met with Weedman, that he determined Weedman was sane at the time of the offense, and that he was able to assist with his defense. Dr. Ross testified that Weedman had previously been diagnosed as being easily angered, being impulsive, and exercising poor judgment. He also discussed Weedman's medications, substance abuse issues, and earlier suicide attempt. During closing arguments, the deputy prosecutor argued: "Defendant claimed insanity then took that back. Then he claimed self-defense . . . ." Id. at 348.

Weedman did not object to the evidence of his insanity defense and its withdrawal, and the failure to make a contemporaneous objection to the admission of evidence at trial generally results in waiver of the error on appeal. See Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010). However, a claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines there was fundamental error. Id. The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. Id. The error claimed must either make a fair trial impossible or amount to clearly blatant violations of basic and elementary principles of due process. Id. Weedman claims

5

that the admission of evidence related to his withdrawn insanity defense resulted in fundamental error.

Our supreme court recently noted that a finding of fundamental error essentially means the trial judge erred by not acting when he or she should have, even without being spurred to action by a timely objection. Brewington v. State, 7 N.E.3d 946, 974 (Ind. 2014). An error blatant enough to require a judge to take action sua sponte is necessarily blatant enough to draw any competent attorney's objection. Id. But the reverse is also true: if the judge could recognize a viable reason why an effective attorney might not object, the error is not blatant enough to be fundamental. Id.

The Fifth Amendment to the United States Constitution states that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against self-incrimination not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding where the answers might incriminate him in future criminal proceedings. State v. Cass, 635 N.E.2d 225, 226 (Ind. Ct. App. 1994), trans. denied.

Weedman relies on Estelle v. Smith, 451 U.S. 454, 468, 101 S. Ct. 1866, 1876 (1981), where the Supreme Court said "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." In Estelle, the trial court had sua sponte ordered a psychiatric examination of

6

the defendant "for the limited, neutral purpose of determining his competency to stand trial . . . ." Estelle, 451 U.S. at 465, 101 S. Ct. at 1874. The defendant in Estelle did not request a psychiatric examination, did not raise an insanity defense, and was not informed of his right to remain silent and the possible use of his statements made during the psychiatric examination. At the sentencing hearing, the State "offered information obtained from the court-ordered competency examination as affirmative evidence to persuade the jury to return a sentence of death." Id. at 466, 101 S. Ct. at 1874. "To meet its burden, the State used respondent's own statements, unwittingly made without an awareness that he was assisting the State's efforts to obtain the death penalty." Id., 101 S. Ct. at 1875. The Supreme Court held that the admission at the sentencing hearing of the defendant's statements to the psychiatrist violated the defendant's Fifth Amendment rights.

Estelle applies, Weedman says, because the State used the results of his court-ordered examination "for a much broader objective that [sic] the original purpose of the examination. The two doctors examined Weedman to determine his competency and sanity. However, the State used the results of these examinations to prove Weedman's guilt and character." Appellant's Br. p. 21. To prove Weedman used unreasonable force, Weedman argues, the State used one doctor's testimony that Weedman was impulsive and had a temper. The State tried to show his insanity defense was part of his effort to fabricate a defense, and it used the testimony to show Weedman had a history of drug abuse, which Weedman says was irrelevant. Weedman asserts, without explanation, that his statements to the doctors were not given freely and voluntarily, so the State should not have used them for those purposes.

7

The State distinguishes Estelle on the basis that the defendant there did not request a sanity evaluation, and such a defendant may not be compelled to respond to a psychiatrist if his statements could later be used against him. Estelle, 451 U.S. at 468, 101 S. Ct. at 1876. The State notes Weedman "was not 'in custody' and was not 'compelled' to travel to Dr. Lieb's and Dr. Ross's offices for mental health evaluations (App.9; Tr. 241, 254)." Appellee's Br. p. at 27. Based on its characterization that the evaluations were something Weedman voluntarily sought, the State argues "nothing in Estelle holds that a defendant can launch an inquiry into probative evidence of his state of mind and actions during an alleged offense and then, when the inquiry does not turn out as he likes, hide what he has learned by 'withdrawing' his request." Id.

We acknowledge the differences between this case and Estelle, which limit the relevancy of Estelle here. See Taylor v. State, 659 N.E.2d 535, 540 (Ind. 1995) (noting that Estelle was limited to cases in which the defendant "neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence"). However, we find that other Indiana cases give guidance in this issue of first impression. We begin by noting that Weedman asserted self-defense at his trial, not an insanity defense. A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. Ind. Code § 35-41-3-2(a); Wilson v. State, 770 N.E.2d 799, 800 (Ind. 2002). Under Indiana Code Section 35-41-3-2, a person is justified in using reasonable force to protect himself from what he reasonably believes to be the imminent use of unlawful force by another person. Gillespie v. State, 832 N.E.2d 1112, 1117 (Ind. Ct. App. 2005). However, a person is not justified in using force if

8

1) he provokes unlawful action by another person with intent to cause bodily injury to the other person, or 2) has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action. Id. A claim of self-defense will also fail if the person "uses more force than is reasonably necessary under the circumstances." Sudberry v. State, 982 N.E.2d 475, 481 (Ind. Ct. App. 2013).

The only statutory element of self-defense to which Weedman's "state of mind" might be relevant is his "reasonable belief" that he was being subjected to the imminent use of unlawful force and his "reasonable belief" that his own use of force was necessary to prevent serious injury to himself. See Gillespie, 832 N.E.2d at 1117. The other elements of self-defense are plainly objective matters that cannot be determined by reference to the "state of mind" of the defendant asserting self-defense. Id. at 1117-18. Thus, it is unclear to us how Weedman's withdrawn insanity defense or the other matters testified to by the doctors were at all relevant to the issues in this case.

The State asserts that "[a] request for a psychiatric examination waives the defendant's privilege against self-incrimination." Appellee's Br. p. 27(citing Fleenor v. State, 622 N.E.2d 140, 148 (Ind. 1993), cert. denied, abrogated on other grounds by Dill v. State, 741 N.E.2d 1230 (Ind. 2001)). The State appears to be referring to this language from Fleenor: "The privilege against self-incrimination bars the State from subjecting the defendant to a psychiatric examination without a warning of rights. However, the bar is

9

waived once the defendant introduces psychiatric evidence in support of an insanity defense."
Fleenor, 622 N.E.2d at 148. Weedman withdrew his insanity defense prior to trial. It therefore is not apparent that he could have introduced psychiatric evidence "in support of" such a defense, which was the step required for him to waive his privilege against self-incrimination.

In fact, "Indiana has long held that a defendant may not submit evidence relating to mental disease or defect except through an insanity defense." Marley v. State, 747 N.E.2d 1123, 1128 (Ind. 2001). Our supreme court held in Cardine v. State, 475 N.E.2d 696 (Ind. 1985), that, where a defendant withdrew his insanity defense and asserted self-defense instead, the trial court properly excluded evidence of his earlier suicide attempt. The court held: "When a defendant raises the defense of insanity, the general rule is that there is great latitude in admitting evidence of other conduct of the defendant, limited to the extent that such conduct must be relevant to the issue of insanity." Cardine, 475 N.E.2d at 699. Where the defendant withdraws his defense of insanity before trial, "the latitude in admitting other prior conduct [becomes] substantially limited." Id. Evidence of the suicide attempt was "too remote and had little if any relationship to his defense." Id.

Our supreme court addressed a similar argument in Simpson v. State, 269 Ind. 495, 381 N.E.2d 1229 (1978). There, the defendant argued that the trial court should have admitted a psychologist's testimony regarding his lack of intent to commit robbery. The court noted that insanity was not an issue at the trial. The court held: "The question of a person's intent at the time of the commission of a crime, not related to an issue of insanity, is

10

a question of fact for the jury and not a proper subject of expertise." Simpson, 269 Ind. at 502, 381 N.E.2d at 1233. The psychologist's testimony was properly excluded because his testimony "would have been nothing more than hearsay and was not necessary as an aid for the jury's determination of the issue of the presence or absence of criminal intent." Id.

Further, in Phelan v. State, 273 Ind. 542, 406 N.E.2d 237 (1980), the admissibility of incriminating remarks made to a physician during a compulsory psychiatric examination were discussed. The court held that, if such remarks were offered to demonstrate the mental condition of the defendant, then they should be admitted. Phelan, 273 Ind. at 545, 406 N.E.2d at 239. If they were offered to demonstrate the guilt of the defendant, then they should not be admitted over proper objection. Id. Similarly, in Taylor, 659 N.E.2d at 541, our supreme court held that the State may not misuse its access to the defendant by attempting to prove the defendant's guilt through the testimony of its physician. "If the court finds that the State is abusing the opportunity and using the defendant's statements to demonstrate guilt, it should not hesitate to exclude such statements." Id. at 541. "There will be cases, however, in which the defendant makes statements during the interview that are both probative of his sanity at the time of the crime and incriminating." Id. "In such cases, if the prejudice to the defendant does not substantially outweigh its probative value, the statements may be admitted. This determination we leave to the sound discretion of the trial judge." Id.

Given those cases, we conclude that the admission of evidence concerning Weedman's withdrawn insanity defense was erroneous.[1] The evidence was simply not relevant to the issues in the case. Given his withdrawal of his insanity defense, Weedman would not have been able to admit the evidence at issue; thus, the State's basis for admitting the evidence is unclear.[2] The State offers no legitimate basis for admitting the evidence.[3] We

---

[1] We note that Rule 12.2 of the Federal Rules of Criminal Procedure addresses these issues in federal court actions. Rule 12.2(c)(4) provides:

> No statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant:
>
> (A) has introduced evidence of incompetency or evidence requiring notice under Rule 12.2(a) or (b)(1), or
>
> (B) has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2).

Further, Rule 12.2(e) provides: "Evidence of an intention as to which notice was given under Rule 12.2(a) or (b), later withdrawn, is not, in any civil or criminal proceeding, admissible against the person who gave notice of the intention."

[2] We further note that, even if Weedman had continued pursuing his insanity defense, the admission of the psychiatrists' testimony in the manner done here would have been improper. Indiana Code Section 35-36-2-2 provides that psychologists or psychiatrists appointed to examine a defendant shall testify after "the presentation of the evidence for the prosecution and for the defense, including the testimony of any mental health experts employed by the state or by the defense." Here, the State called Dr. Lieb and Dr. Ross as part of its presentation of evidence. See Phelan, 273 Ind. at 544, 406 N.E.2d at 238 (holding that "the trial court erred in allowing the court-appointed physician to testify during the State's case in chief over the Defendant's objection").

[3] Relying on Brewington, 7 N.E.3d 946, the State argues that Weedman's failure to object to any of the evidence at issue was a matter of defense strategy. Despite the language in Brewington, we believe such a "strategy" argument is more properly addressed in the context of an ineffective assistance of trial counsel issue in post-conviction proceedings. We simply have no information regarding Weedman's trial counsel's thoughts on his strategy. Moreover, we need not address the State's strategy argument because we conclude that the admission of the evidence did not result in fundamental error.

conclude that the State was improperly attempting to prove Weedman's guilt through the discussion of his withdrawn insanity defense and the doctors' testimony.

Although we conclude that the admission of evidence regarding Weedman's withdrawn insanity defense was erroneous, we cannot say that the admission resulted in fundamental error. The evidence supporting the jury's guilty verdict was overwhelming. Weedman admitted to hitting Schlichter, although he claimed self-defense. Doctors testified at the trial that Schlichter's face was essentially "flattened" and that such injuries are typically seen in car accidents or falls from large heights. Tr. p. 300. Dr. Scott Wagner testified that there were at least four separate blows to Schlichter's face but probably more than seven or eight blows. Weedman claimed that he hit Schlichter once, hit him with a glass as Weedman fell on Schlichter, and kicked Schlichter a couple times. Dr. Wagner testified that Weedman's explanation would not account for Schlichter's injuries. Rather, Dr. Wagner testified that, rather than kicking, "it would be more of a stomping type injury . . . ." Id. at 305. According to Dr. Wagner, after the blow fracturing Schlichter's sinus and causing the brain bruise, he would have been immediately debilitated. Dr. Donald Reed testified that there were more than enough strikes to render Schlichter unconscious. The evidence was overwhelming that Weedman's reaction to Schlichter's alleged actions did not qualify as self-defense because he used more force than was reasonably necessary under the circumstances. See Halliburton v. State, 1 N.E.3d 670, 683 n.7 (Ind. 2013) ("Where evidence of guilt is overwhelming any error in the admission of evidence is not fundamental."). Consequently,

13

we conclude that, although the admission of the evidence was erroneous, it did not amount to fundamental error.

Weedman also argues that, after the State discussed and admitted evidence regarding the withdrawn insanity defense, Weedman attempted to also discuss the issue and the trial court sustained the State's objection. Specifically, during Weedman's cross-examination of Dr. Lieb, the trial court sustained the State's objection to Weedman asking whether Weedman had any "shortcomings at all with his ability to assist in his defense." Tr. p. 244. According to Weedman, "[t]he trial court's rulings essentially ensured the State freely could use the worst of the evidence arising from Weedman's withdrawn insanity defense and Weedman could not respond." Appellant's Br. p. 23.

What might otherwise be inadmissible hearsay evidence may become admissible where a party "opens the door" to questioning on that evidence. Turner v. State, 953 N.E.2d 1039, 1055 (Ind. 2011). The evidence relied upon to "open the door" must leave the trier of fact with a false or misleading impression of the facts related. Ortiz v. State, 741 N.E.2d 1203, 1208 (Ind. 2001). Although we might agree that the State opened the door, Weedman has not demonstrated that the State's evidence created a false or misleading impression that should have been corrected with Weedman's evidence. Moreover, even if the trial court erred by excluding Weedman's evidence after having admitted the State's evidence, we conclude that the alleged error was harmless for the same reasons already discussed.

## II. Prosecutorial Misconduct

14

Next, Weedman argues that the deputy prosecutor committed misconduct when he commented on Weedman's post-arrest silence and referenced Weedman's tattoo.[4] In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine: (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. Ryan v. State, 9 N.E.3d 663, 667 (Ind. 2014) (quoting Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006)). "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." Id. (quoting Cooper, 854 N.E.2d at 835). To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. Id.

Our standard of review is different where a claim of prosecutorial misconduct has been waived for failure to preserve the claim of error. Id. The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. Id. at 667-68. "Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to 'make a fair trial

---

[4] Weedman also argues that the deputy prosecutor committed misconduct by discussing Weedman's withdrawn insanity defense, but we have previously addressed the admissibility of that evidence and determined that its admission did not result in fundamental error. Consequently, we will not address that

15

impossible.'" Id. at 668 (quoting Benson v. State, 762 N.E.2d 748, 756 (Ind. 2002)). In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." Id.

## A. Reference to Tattoo

During opening arguments, the prosecutor said the evidence would show Weedman "has anger control problems, temper problems, in fact indicative of his philosophy he has the words "'total chaos' tattooed on his arm, his hand, conveniently covered up by a band-aid today." Tr. p. 114. Weedman objected and requested a mistrial. The trial court sustained the objection but denied the request for a mistrial.[5]

To preserve a claim of prosecutorial misconduct, a defendant must object and request an admonition. Delarosa v. State, 938 N.E.2d 690, 696 (Ind. 2010). If the defendant is not satisfied with the admonition, the defendant must move for a new trial. Id. Failure to comply waives the prosecutorial misconduct claim. Id. Weedman does not argue on appeal that the reference to his tattoo was fundamental error. Weedman acknowledges that "[t]he prosecutorial misconduct related to the tattoo evidence, standing alone, likely did not place Weedman in grave peril . . . ." Appellants' Br. p. 34. We agree. We cannot say that the brief

---

evidence further.

[5] The PSI indicates that Weedman's tattoo says, "Anarchy." App. p. 402.

reference to the tattoo placed Weedman in grave peril or amounted to fundamental error, though the remark was dangerously gratuitous.

## B. Comments on Weedman's Post-Arrest Silence

The police gave Weedman a Miranda warning when he was arrested. In Doyle v. Ohio, 426 U.S. 610, 619, 96 S. Ct. 2240, 2245 (1976), the United States Supreme Court held that under the Fourteenth Amendment a prosecutor may not use the silence of a defendant who has been arrested and given Miranda warnings to impeach the defendant. Sobolewski v. State, 889 N.E.2d 849, 857 (Ind. Ct. App. 2008), trans. denied. Miranda warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. Id. An alleged Doyle violation may be reviewed under the fundamental error doctrine. Id. "Because a Doyle violation is so egregious and so inherently prejudicial, reversal is the norm rather than the exception." Teague v. State, 891 N.E.2d 1121, 1126 (Ind. Ct. App. 2008).

An error of this type is harmless only when the court, after assessing the record to determine the probable impact of the improper evidence on the jury, can conclude beyond a reasonable doubt that the error did not influence the jury's verdict. Id. In analyzing whether a Doyle violation is harmless beyond a reasonable doubt, we examine five factors: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial court of an opportunity to grant

17

a motion for mistrial or give a curative instruction. Kubsch v. State, 784 N.E.2d 905, 914-15 (Ind. 2003).

Weedman asserts the deputy prosecutor "repeatedly inquired or made statements to the effect that Weedman had never revealed to the State his version of events presented at trial." Appellant's Br. pp. 30-31. It does not appear Weedman objected to any of the Doyle violations he now alleges, so he must show any error was fundamental. He points specifically to: 1) testimony by Detective Betz that she approached Weedman for an interview but he said he wanted an attorney; 2) Detective Betz's testimony that she believed she could not legally continue speaking to Weedman after he said he wanted an attorney; 3) the deputy prosecutor's questions on cross-examination asking Weedman why, when police responded to the home and found Schlichter injured on the floor, he did not "go over to the officer and give him this story [that he was defending himself from Schlichter]," Tr. p. 340, and the deputy prosecutor's question "you do tell somebody I don't want to talk to my mom because she can't keep her mouth shut. Why didn't you tell this other part of your story?," id.; 4) testimony by Deputy Steven Wendling, who asked Weedman what happened and Weedman replied "I'm taking the Fifth on that," id. at 227; and 5) the deputy prosecutor's reference in closing argument to Weedman's mother's inability to keep her mouth shut and his comment "you don't have to worry about people keeping their mouth shut if you are defending yourself and you are innocent. You want everybody to know that stuff . . . you want to tell them that stuff . . . that's something you want brought out, not something you

18

want to hide." Id. at 344. The deputy prosecutor later asked "[w]hy don't we hear that story until today[?]" Id. at 347.

Weedman relies on Kubsch, 784 N.E.2d at 915, where there was a Doyle violation. The State twice played a videotape where Kubsch invoked his right to remain silent:

> The use to which the State, in its case in chief, put those portions of the videotape showing Kubsch invoking his right to silence is rather apparent: Kubsch was unwilling to talk with police even though his wife and step-son had just been killed, giving the impression that Kubsch had something to hide or else he would assist in locating their killers. And although the amount of other evidence indicative of Kubsch's guilt as set forth in the "Facts" section of this opinion is sufficient to sustain the convictions, that evidence is circumstantial and was fiercely contested at trial.

Kubsch, 784 N.E.2d at 915.

The State first notes some of Weedman's statements were made before he received Miranda warnings, so references to them were not Doyle violations. See Peters v. State, 959 N.E.2d 347, 353 (Ind. Ct. App. 2011) (observing that a defendant's post-arrest, post-Miranda silence may not be used to impeach him, but a defendant's post-arrest, pre-Miranda silence may be used for impeachment purposes). Weedman asserts those statements that were pre-Miranda also encompassed Weedman's silence from the time of arrest through the date of trial, i.e., Detective Betz's statement that Weedman never initiated another conversation.

The State admits to only one "real instance of a Doyle problem," that of an officer's testimony that he asked Weedman what happened and Weedman replied, "I'm taking the Fifth on that." Appellee's Br. p. 31; Tr. p. 227. The State characterizes that testimony as part of a "run-on answer," that could not have been anticipated or prompted by the

19

prosecutor's question about what a photograph depicted. Appellee's Br. p. 31. The State

points out that the deputy prosecutor interrupted Deputy Wendling and told him, "Just stick

to what the pictures are." Tr. p. 227. Therefore, the State says, there was no prosecutorial

misconduct.

Even if we were to conclude that the deputy prosecutor's questions and comments

were Doyle violations, Weedman did not object to the questions and comments at issue, and

he has failed to demonstrate that the alleged misconduct amounted to fundamental error. For

the reasons already mentioned, the State presented overwhelming evidence that Weedman's

self-defense claim failed due to his excessive use of force against Schlichter. Given the

overwhelming evidence of his excessive force, Weedman claim of fundamental error fails.

See, e.g., Sobolewski, 889 N.E.2d at 858 ("Given the overwhelming evidence offered to

impeach Sobolewski, as well as the evidence of his guilt, we conclude that it is clear beyond

a reasonable doubt that any error in the State's use of Sobolewski's post-arrest silence to

impeach him did not contribute to his conviction and, therefore, was harmless.").

### III. *Admission of Testimony Regarding Statements by Weedman's Mother*

Weedman argues that the trial court abused its discretion by admitting testimony

regarding certain statements made by his mother. The trial court has broad discretion to rule

on the admissibility of evidence. Guilmette v. State, 14 N.E.3d 38, 40 (Ind. 2014). We

review a trial court's rulings for an abuse of that discretion, and we reverse only when

admission is clearly against the logic and effect of the facts and circumstances and the error

affects a party's substantial rights. Id.

20

Weedman argues that the trial court abused its discretion by admitting evidence of statements made by Cindy Schlichter, Weedman's mother and Schlichter's wife, to EMT Hillary Gaskill and to Detective Diane Betz of the Wells County Sheriff's Department. According to Weedman, both EMT Gaskill and Detective Betz's testimony was hearsay and was "extremely prejudicial" because it diminished Weedman's claim of self-defense. Appellant's Br. p. 38.

EMT Gaskill testified that Cindy told her that Weedman wanted to kill himself because of what he had done to Schlichter, that Weedman and Schlichter did not get along, and that she had broken up fights between the two men before. Weedman objected, and the trial court allowed the testimony for impeachment purposes only. Weedman does not argue that admission for impeachment purposes was error.[6] Cindy had earlier testified that she did not recall telling the EMT that Weedman wanted to kill himself. During closing arguments, the deputy prosecutor said:

> Mother also told the EMT that the Defendant told her "I should probably just kill myself because I went too far with Mr. Schlichter." "I went too far." Pretty easy word to understand. "I did more than I should have. I should have stopped here and I went too far." "This was enough and I went beyond that." "I went too far, I ought to just kill myself." I'm that upset because I went too far. Again, not something you say if you are innocent.

Tr. pp. 344-45.

---

[6] In his reply brief, Weedman asserts the State "is incorrect in claiming that Weedman does not allege the trial court erred in admitting for impeachment purposes [the EMT's] testimony." Appellant's Reply Br. p. 14. He directs us to page 36 of his Appellant's brief, but there is no discussion, or even mention, of impeachment on that page.

Evidence admitted only for impeachment may not be used as substantive evidence. Lawrence v. State, 959 N.E.2d 385, 389 (Ind. Ct. App. 2012), trans. denied. The State does not argue that the testimony was admissible as substantive evidence, and we agree that the evidence was improperly used during closing arguments as substantive evidence. Instead, the State contends that any error in use of the evidence as substantive evidence rather than impeachment was harmless.

We must disregard errors in the admission of evidence as harmless unless they affect a party's substantial rights. VanPatten v. State, 986 N.E.2d 255, 267 (Ind. 2013); Ind. Trial Rule 61. In determining whether error in the introduction of evidence affected the defendant's substantial rights, we must assess the probable impact of the evidence upon the jury. Id. When a conviction is supported by substantial evidence of guilt sufficient to satisfy this Court that there is no substantial likelihood that the questioned evidence contributed to the conviction, the error is harmless. Ware v. State, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004). Given the overwhelming evidence of excessive force used by Weedman in injuring Schlichter, we conclude that there is no substantial likelihood that the use of the testimony as substantive evidence rather than impeachment evidence contributed to the conviction.

As for Detective Betz's testimony, Detective Betz testified that Cindy told her that, according to Weedman, Schlichter had "come at" Weedman and was going to hit Weedman. Tr. p. 206. Cindy told Detective Betz that Weedman would not tell Cindy any more information "because he knew she couldn't keep her mouth shut." Id. Weedman did not object to this testimony. Because he did not object, he must demonstrate that the admission

22

of the evidence resulted in fundamental error. <u>Brown</u>, 929 N.E.2d at 207. However, the fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. <u>Id.</u> The error claimed must either make a fair trial impossible or amount to clearly blatant violations of basic and elementary principles of due process. <u>Id.</u>

We need not address whether the testimony was properly admitted because we conclude that, even if its admission was improper, it did not result in fundamental error. It was so prejudicial as to be fundamental error, Weedman says, because it diminished Weedman's credibility and his claim of self-defense because it suggested his defense was fabricated and Weedman and Schlichter had a violent history. However, Cindy's assertion that Schlichter had "come at" Weedman and was going to hit him was helpful to Weedman's self-defense theory. Tr. p. 206. The assertion that Weedman did not believe Cindy could "keep her mouth shut," simply does not amount to fundamental error. <u>Id.</u> To the extent that the testimony diminished his self-defense claim, that claim was diminished much more by the overwhelming expert medical testimony regarding Schlichter's extensive injuries and the amount of times he was hit by Weedman. The testimony did not make a fair trial impossible.

### IV. *Admission of Evidence of Traumatic Brain Injury*

Weedman argues that the trial court abused its discretion by excluding evidence of his traumatic brain injury. The trial court has broad discretion to rule on the admissibility of evidence. <u>Guilmette</u>, 14 N.E.3d at 40. We review a trial court's rulings for an abuse of that

discretion, and we reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. Id.

Weedman sought to admit photographs of himself showing his 2008 brain injury. The trial court granted the State's motion in limine to exclude the photographs and would not allow their admission at trial when Weedman sought to introduce them. He argued at trial that the photographs were relevant to show the brain injury, which was the basis for his reasonable belief he would be killed or seriously injured if Schlichter landed a punch to Weedman's head. The State argues Weedman presented no doctor as a sponsoring witness and only a doctor could testify about damage to Weedman's skull. The trial court noted that evidence of Weedman's prior injury had already been admitted and that there had "been no connection . . . thus far that these injuries in any way relate to the alleged incident in this case." Tr. p. 321.

When a defendant asserts self-defense, any fact that reasonably would place a person in fear or apprehension of death or bodily injury is admissible. Russell v. State, 577 N.E.2d 567, 568 (Ind. 1991). There need not be actual danger—a good faith belief is sufficient. Shepard v. State, 451 N.E.2d 1118, 1120-21 (Ind. Ct. App. 1983). Weedman relies on Brand v. State, 766 N.E.2d 772, 782 (Ind. Ct. App. 2002), trans. denied, where we determined the trial court should not have excluded Brand's testimony that his victim sold drugs, was a member of a gang, and had offered to sell Brand a gun. We noted evidence of the victim's character may be admitted to show that the victim had a violent character giving the defendant reason to fear him. Brand, 766 N.E.2d at 780. The victim's reputation for

24

violence is pertinent to a claim of self-defense. Id. Thus, the victim's reputed character, propensity for violence, prior threats and acts, if known by the defendant, may be relevant to the issue of whether a defendant had fear of the victim prior to utilizing deadly force against him. Id. Therefore, a defendant is entitled to support his claim of self-defense by introducing evidence of matters that would make his fear of the victim reasonable. Id.

The photos Weedman wanted admitted do not indicate Schlichter had a violent character, but Weedman argues they, like the testimony in Brand, illustrate "the reasonableness of [Weedman's] fear of attack by the victim and the need to defend himself." Appellant's Br. p. 41. The applicability of Brand is questionable as there we explicitly said the evidence introduced by a defendant to show his apprehension of the victim must imply a propensity for violence on the part of the victim. Brand, 766 N.E.2d at 780. Weedman's evidence indicates why he had reason to fear Schlichter, but it does not show Schlichter had violent tendencies.

Regardless, we conclude that, even if the photos should have been admitted, any error was harmless. As the trial court noted, evidence regarding Weedman's traumatic brain injury and fear of being hit on the head was repeatedly discussed during the trial. The photos were merely cumulative of other evidence presented at the trial. "Where the wrongfully excluded testimony is merely cumulative of other evidence presented, its exclusion is harmless error." Sylvester v. State, 698 N.E.2d 1126, 1130 (Ind. 1998). Therefore, Weedman was not prejudiced by the exclusion of the evidence.

### V. Sufficiency of the Evidence

25

Weedman next argues that the State failed to rebut his claim of self-defense. Indiana Code Section 35-41-3-2(c) provides: "A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force." A claim of self-defense requires a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm. Henson v. State, 786 N.E.2d 274, 277 (Ind. 2003). "However, the force used must be proportionate to the requirements of the situation." McKinney v. State, 873 N.E.2d 630, 643 (Ind. Ct. App. 2007), trans. denied. A claim of self-defense will fail if the person "uses more force than is reasonably necessary under the circumstances." Sudberry, 982 N.E.2d at 481. "Where a person has used more force than necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator." Hollowell v. State, 707 N.E.2d 1014, 1021 (Ind. Ct. App. 1999).

The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. Wilson, 770 N.E.2d at 800. We neither reweigh the evidence nor judge the credibility of witnesses. Id. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. Id. When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. Id. If a defendant is convicted despite his or her claim of self-defense,

we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. Id. at 800-01.

Weedman testified that Schlichter initiated the altercation by insulting him and then twisting his finger. According to Weedman, Schlichter swung at him and missed, and Weedman was in fear for his life due to his brain injury from 2008. Weedman claimed that he hit Schlichter once, hit him with a glass as Weedman fell on Schlichter, and kicked Schlichter a couple times. Even if the jury accepted Weedman's explanation of how the altercation started, the State presented more than enough evidence that Weedman responded with more force than was reasonably necessary under the circumstances. Doctors testified at the trial that Schlichter's face was essentially flattened and that such injuries are typically seen in car accidents or falls from large heights. Dr. Wagner testified that there were at least four separate blows to Schlichter's face but probably more than seven or eight blows. Dr. Wagner testified that Weedman's explanation would not account for Schlichter's injuries. Rather, Dr. Wagner testified that, rather than kicking, "it would be more of a stomping type injury . . . ." Tr. p. 305. According to Dr. Wagner, after the blow fracturing Schlichter's sinus and causing the brain bruise, he would have been immediately debilitated. Dr. Reed testified that there were more than enough strikes to render Schlichter unconscious. The evidence was overwhelming that Weedman's reaction to Schlichter's alleged actions did not qualify as self-defense because he used more force than was reasonably necessary under the circumstances. The evidence is sufficient to sustain Weedman's conviction.

### VI. Sentencing—Abuse of Discretion

Sentencing decisions are within the sound discretion of the trial court. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218. However, a trial court may be found to have abused its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that explains reasons for imposing a sentence where the record does not support the reasons; (3) entering a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; and (4) entering a sentencing statement in which the reasons given are improper as a matter of law. Id. at 490-91. The reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. Id. at 491. The weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. Id.

Weedman argues that the trial court abused its discretion because it found no mitigating factors. Weedman argues that the trial court should have found that his mental illness and the fact that Schlichter "induced or facilitated" the offense were mitigators. Appellant's Br. p. 50. A trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. Rascoe v. State, 736 N.E.2d 246, 249 (Ind. 2000). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. Anglemyer, 868 N.E.2d at 493.

The trial court considered but rejected Weedman's mental health and the fact that Schlichter instigated the altercation as a mitigating factors. The trial court stated:

28

I believe there's probably enough testimony during the trial and [I] certainly believe Mr. Schlichter by all accounts was an alcoholic. I'm sure that, I think it's uncontested that his interaction with Mr. Weedman, Mr. Schlichter's interaction[s] with Mr. Weedman were difficult, that there was a lot of animosity between the two parties, but I have to also consider looking at the Defendant's criminal history over this period of time that he would have lived in Mr. Schlichter's home probably fueled some of that animosity. So as much as Mr. Weedman wants to blame Mr. Schlichter for the way he was treated, Mr. Weedman needs to probably also consider his own conduct during that period of time as well.

\* \* \* \* \*

Also considered Mr. Weedman you have, the injuries you suffer from that you are asking for leniency on are the result and counsel wants me to consider the previous injuries to your head, I can't not consider the fact that those injuries were self-inflicted by you when you attempted to commit suicide at one point by driving your vehicle into another vehicle that had just been occupied by your girlfriend at that time . . . . The point is you caused, these injuries to yourself are self-imposed.

Tr. p. 381.

According to Weedman, there was no evidence that his girlfriend had just exited the vehicle that he hit in 2008. The State concedes that there was no evidence presented that Weedman's girlfriend had just exited the vehicle but argues that the trial court was referring to another woman who was slightly injured when Weedman's vehicle also hit her vehicle. Regardless, although the trial court briefly mentioned this fact, its main focus during the discussion was the fact that Weedman's injuries were self-inflicted. We are confident that this error did not affect the sentence imposed by the trial court. See Anglemyer, 868 N.E.2d at 491 (requiring remand for resentencing "if we cannot say with confidence that the trial

29

court would have imposed the same sentence had it properly considered reasons that enjoy support in the record").

Further, Weedman argues that, regardless of the fact that his injuries were self-inflicted, he was left with a significant brain injury, and that Schlichter verbally abused and attempted to physically abuse Weedman "for years." Appellant's Br. p. 50. The trial court clearly considered those arguments and rejected them as mitigating factors. Although Schlichter's behavior may have left much to be desired, the trial court properly pointed out that Weedman contributed to the situation too. Although evidence of Weedman's mental health issues were presented, "[i]n order for a [defendant's] mental history to provide a basis for establishing a mitigating factor, there must be a nexus between the defendant's mental health and the crime in question." Steinberg v. State, 941 N.E.2d 515, 534 (Ind. Ct. App. 2011), trans. denied. Weedman has not established a nexus between his mental health and the offense. Weedman has not shown that either proposed mitigator was significant or clearly supported by the record.

### VII.  Inappropriate Sentencing

Weedman argues that his sentence is inappropriate under Indiana Appellate Rule 7(B). Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still,

we must give due consideration to that decision. Id. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The nature of the offense is that thirty-one-year-old Weedman brutally beat his stepfather, leaving him permanently disabled and legally blind. Although Weedman claimed that Schlichter was the initial aggressor, Weedman's response was vicious. One expert opined that Schlichter sustained "stomping" injuries. Tr. p. 305. Weedman essentially "flattened" Schlichter's face. Id. at 300.

A review of the character of the offender reveals that Weedman has a history of criminal offenses. As a juvenile, he was placed in programs of informal adjustment in 1996 for incorrigibility and illegal possession of an alcoholic beverage and in 2000 for

incorrigibility. In 2001, he was placed on a program of formal adjustment for possession of marijuana and illegal possession of an alcoholic beverage. As an adult, he was convicted of Class A misdemeanor resisting law enforcement and Class A misdemeanor possession of marijuana in 2002. In 2003, he pled guilty to Class C misdemeanor operating a vehicle while intoxicated and Class C misdemeanor illegal possession of an alcoholic beverage. Judgment was withheld, and the case was later dismissed. In the military, he was charged with wrongful possession of drugs and received a "punitive discharge." App. p. 406. In 2008, he was convicted of Class A misdemeanor invasion of privacy, and he later violated his probation by committing a new offense. In 2009, he was convicted of Class D felony battery resulting in bodily injury to a police officer and Class A misdemeanor battery resulting in bodily injury. We also note that, in 2008, Weedman drove his vehicle into his girlfriend's parked car in a suicide attempt. He was charged with Class A misdemeanor criminal recklessness, but that charge was later dismissed. As a result of the suicide attempt, Weedman sustained a traumatic brain injury. His PSI notes that Weedman has been diagnosed with "Substance-Induced Mood Disorder, Antisocial Personality Disorder, Impulse Control Disorder, Personality Disorder, Bipolar Disorder, and Malingering." Id. at 404.

Weedman argues that, given his traumatic brain injury and mental illness, we should reduce his twenty-year sentence to twelve years. However, it appears that, even before his 2008 suicide attempt, Weedman had difficulty conforming to society's expectations. Given

the significant injuries to Schlichter and Weedman's failure to learn from his past criminal convictions, we cannot say that the sentence imposed by the trial court is inappropriate.

## Conclusion

Although it was erroneous to admit evidence of Weedman's withdrawn insanity defense, we conclude that the error did not result in fundamental error based on the overwhelming evidence of Weedman's excessive use of force. For the same reason, the deputy prosecutor's alleged misconduct did not result in fundamental error. Testimony regarding statements made by Weedman's mother to an EMT was harmless, and testimony regarding statements made by his mother to a detective did not result in fundamental error. We recognize that a significant amount of evidence was improperly admitted at this trial. At some point, the cumulative effect of the improper evidence would reach a tipping point and make a fair trial impossible. See Myers v. State, 887 N.E.2d 170, 196 (Ind. Ct. App. 2008) (acknowledging "the possibility that the cumulative effect of trial errors may warrant reversal"), trans. denied. However, given the avalanche of evidence of Weedman's excessive force, we conclude that the tipping point was not reached here.

We also conclude that any error in the exclusion of photographs of Weedman's traumatic brain injury was harmless because the photographs were cumulative of other evidence admitted regarding the brain injury. The State presented sufficient evidence to rebut Weedman's self-defense claim, and the trial court properly sentenced Weedman. Finally, we conclude that his twenty-year sentence is not inappropriate. We affirm.

Affirmed.

MAY, J., and CRONE, J., concur.