## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2019, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander W. Robbins
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy M. Tinsley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | December 10, 2019<br><br>Court of Appeals Case No.<br>19A-CR-1292<br><br>Appeal from the Morgan Superior Court<br><br>The Honorable Sara A. Dungan, Judge<br><br>Trial Court Cause No.<br>55D03-1711-F3-2154 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Timothy Tinsley was found guilty of criminal confinement, a Level 6 felony, and battery resulting in serious bodily injury, a Level 5 felony. Tinsley was sentenced to a total of six years in the Indiana Department of Correction, with three years suspended to probation. Tinsley appeals his conviction for battery resulting in serious bodily injury, raising one issue for our review: whether the State presented sufficient evidence to rebut Tinsley's claim of self-defense. Concluding the State produced sufficient evidence to rebut Tinsley's claim of self-defense, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict are as follows: Tinsley and L.R. began dating in September 2017. Almost immediately after their relationship began, L.R. moved in with Tinsley and his family.

[3] On October 14, 2017, L.R. got a ride from Tinsley's apartment to a job interview at Papa Murphy's. After the interview, L.R. walked to a nearby Kroger and then back to Papa Murphy's, where she and Tinsley had arranged to meet. When she arrived at Papa Murphy's, Tinsley was upset and accused her of cheating on him. Tinsley and L.R. continued to argue while they walked back to Tinsley's apartment. During the walk, L.R. told Tinsley that she "wasn't cheating on him," that "[she] was done" and that they "could break up[,]" but Tinsley repeatedly told her "no." Transcript, Volume 3 at 120.

Regardless, L.R. decided to gather her things from Tinsley's home and move out.

[4] When Tinsley and L.R. arrived at the apartment, L.R. began packing her belongings. L.R. then attempted to leave, but Tinsley slammed the front door shut, picked L.R. up, and carried her back to his bedroom. While in the bedroom, Tinsley unpacked L.R.'s belongings, again accused L.R. of cheating on him, and told her that the only way to prove that she was not cheating was to have sex with him. Tinsley then pulled L.R.'s pants and underwear down to her mid-thigh. L.R. curled into a ball and Tinsley stopped. At some point in the altercation, Tinsley got on top of L.R., put his hands around her neck, and choked her until she could not breathe. L.R. struck Tinsley in an attempt to stop him from choking her. Tinsley then punched L.R. in the face, causing her nose to bleed profusely.

[5] L.R. was prevented from leaving Tinsley's room for several hours, but eventually made a plan to reach out for help. L.R. told Tinsley that she needed to use the bathroom. Tinsley allowed her to go to the bathroom but stood outside the bathroom door. While in the bathroom, L.R. sent pictures of her injuries to a friend and asked that she come get her. L.R.'s father was made aware of the pictures and called L.R. to tell her he was going to pick her up. L.R. informed Tinsley that her dad was coming to get her. When L.R.'s father picked her up, Tinsley stated, "[Y]ou know that's not me. I normally don't do that." *Id.* at 65. Tinsley later left a voicemail for L.R. stating, "Baby I'm sorry. Know that's not me[.]" Exhibit Volume 1 at 49, State's Exhibit 25.

[6] L.R.'s father took her to the hospital. While at the hospital, L.R. underwent a CAT scan that determined she had a broken nose and separated bones. Later, L.R. saw an optometrist who found that her eyes were misaligned and that she needed treatment.

[7] The State charged Tinsley with Count I, Level 3 felony attempted rape; Count II, Level 5 felony criminal confinement; Count III, Level 5 felony battery resulting in serious bodily injury, Count IV, Level 6 felony strangulation; Count V, Level 6 felony intimidation; and Count VI, Level 6 felony intimidation. A jury found Tinsley guilty of Count II, criminal confinement as a Level 6 felony, and Count III, battery resulting in serious bodily injury, and found him not guilty of the remaining charges. The trial court sentenced Tinsley to 180 days on Count II to be served concurrently to six years on Count III, with three years suspended. Tinsley now appeals only his conviction for battery resulting in serious bodily injury.

# Discussion and Decision

## I. Standard of Review

[8] Tinsley testified he struck L.R. in self-defense and contends the State failed to present sufficient evidence to rebut his claim. We review a challenge to the sufficiency of evidence to rebut a claim of self-defense using the same standard as that used for any claim of insufficient evidence. *Pinkston v. State,* 821 N.E.2d 830, 841 (Ind. Ct. App. 2004), *trans. denied.* Thus, we neither reweigh the evidence nor judge the credibility of the witnesses. *Wear v. State,* 593 N.E.2d

1179, 1179 (Ind. 1992). In the event the defendant is convicted despite asserting self-defense, we will reverse only if no reasonable person could say that the claim of self-defense was negated beyond a reasonable doubt. *Wilson v. State*, 770 N.E.2d 799, 800-01 (Ind. 2002).

[9]     "A person is justified in using reasonable force against any other person to protect [himself] . . . from what [he] reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). To prevail on a claim of self-defense, a defendant must show that he 1) was in a place he had a right to be; 2) did not provoke, instigate, or participate willingly in the violence; and 3) had a reasonable fear of bodily harm. *Pinkston,* 821 N.E.2d at 842. Any force used must be proportionate to the situation, however; a claim of self-defense will fail if the defendant has used more force than is reasonably necessary under the circumstances. *Weedman v. State*, 21 N.E.3d 873, 892 (Ind. Ct. App. 2014), *trans. denied*. Once a defendant has established these three elements, the State bears the burden of rebutting at least one of them beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 800. The State may satisfy this burden either by rebutting the defense directly, affirmatively showing the defendant did not act in self-defense, or relying on the sufficiency of the evidence in its case in chief. *Hood v. State*, 877 N.E.2d 492, 497 (Ind. Ct. App. 2007), *trans. denied.*

## II. Sufficiency of the Evidence

[10]     As stated above, L.R. testified that Tinsley refused to let her leave the apartment by physically picking her up and taking her into his bedroom. There,

he tried to rape her and then put his hands around her neck and choked her. To try to stop the assault, she hit him in the face. Tinsley then punched her in the face, breaking her nose and ultimately causing her vision to be impaired. Tinsley, on the other hand, testified that when he and L.R. arrived at the apartment, she tried to steal his Xbox as she was packing her things. When Tinsley tried to retrieve the Xbox, L.R. hit him three or four times. Tinsley testified he was scared and "just like extended my fist out" and struck L.R. in the face. Tr., Vol. 4 at 5.

[11] Tinsley argues that because the jury found him not guilty of attempted rape and strangulation, it must not have believed the events happened as described by L.R. Instead, it must have believed his version of events that L.R. was the initial aggressor and that he acted in self-defense out of fear. Essentially, Tinsley argues the inconsistency in the jury's verdicts necessarily means the State failed to disprove his theory of self-defense beyond a reasonable doubt.

[12] In *Beattie v. State,* 924 N.E.2d 643, 649 (Ind. 2010), the Indiana Supreme Court held that "[j]ury verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable." When a jury returns logically inconsistent verdicts, "it is . . . likely that the jury chose to exercise lenity, refusing to find the defendant guilty of one or more additionally charged offenses, even if such charges were adequately proven by the evidence." *Id.* at 648. To the extent Tinsley requests that we review his conviction of battery causing serious bodily injury in light of the jury's other verdicts, we decline to do so.

[13] The *Beattie* court further noted, however, that the "evaluation of whether a conviction is supported by sufficient evidence is independent from and irrelevant to the assessment of whether two verdicts are contradictory and irreconcilable." *Id.* To convict Tinsley of battery resulting in serious bodily injury, the State was required to prove that Tinsley knowingly or intentionally touched L.R. in a rude, insolent, or angry manner and that it resulted in serious bodily injury. Ind. Code § 35-42-2-1(c)(1), (g)(1). Serious bodily injury means bodily injury that creates a substantial risk of death or that causes extreme pain. Ind. Code § 35-31.5-2-292(3). In reviewing the sufficiency of the evidence supporting Tinsley's conviction of battery resulting in serious bodily injury, we "consider only the probative evidence and reasonable inferences *supporting* the verdict." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).

[14] Tinsley presented his version of events to the jury. However, even if the jury believed that L.R. instigated the violence as he claims, self-defense fails if the defendant used more force than is reasonably necessary under the circumstances. *See Weedman*, 21 N.E.3d at 892. In response to L.R. hitting him and causing scratches on his face, Tinsley punched L.R. in the face so hard he broke her nose, separated bones in her face, and damaged her vision. Her nose immediately started bleeding profusely and she testified that it hurt "[p]retty bad" at the time and she was still in pain when her dad took her to the hospital. Tr., Vol. 3 at 127. The jury observed both L.R. and Tinsley on the stand and saw pictures of their respective injuries. Whether a defendant acted in self-defense is a question of fact for the factfinder, and the factfinder's conclusion is

entitled to considerable deference. *Griffin v. State,* 997 N.E.2d 375, 381 (Ind. Ct. App. 2013), *trans. denied.* Viewing the evidence in the light most favorable to the verdict, the jury could reasonably determine Tinsley instigated the incident by keeping L.R. from leaving the room, and, at the very least, responded disproportionately to L.R. hitting him. Accordingly, the State's evidence was sufficient to rebut Tinsley's self-defense claim.[1]

# Conclusion

The State presented sufficient evidence to refute Tinsley's claim of self-defense and to prove that he committed the crime of battery causing serious bodily injury. Therefore, we affirm his conviction.

Affirmed.

Mathias, J., and Pyle, J., concur.

---

[1] As Tinsley did not deny hitting L.R., the only remaining question about the sufficiency of the evidence to support his conviction is whether she suffered serious bodily injury. Tinsley does not specifically dispute this element of the offense, and we conclude the jury, upon hearing L.R. testify about her injuries and seeing the pictures, could reasonably have concluded that she suffered extreme pain.